# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL SWEIG,

    Plaintiff,

v.

ABM INDUSTRIES, INC., a Delaware corporation,

    Defendant.

No. 2007L013224
CALENDAR/ROOM S
TIME 00:00
Breach of Contract

JURY TRIAL DEMANDED

FILED-18
07 NOV 26 PM 2:13
DOROTHY BROWN
CLERK
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION

## COMPLAINT

Plaintiff, Michael Sweig ("Sweig"), for his Complaint against ABM Industries, Incorporated ("ABM"), states as follows:

### THE PARTIES

1. Sweig is the former Chairman and Chief Executive Officer of Lakeside Building Maintenance, Inc. ("Lakeside"), and the former Chief Executive of Lakeside Building Maintenance of Michigan ("Lakeside Michigan"). Prior to July 2002, Lakeside and Lakeside Michigan provided janitorial and facility maintenance services to commercial, industrial, institutional and retail facilities.

2. ABM provides janitorial, parking, engineering, security, lighting and mechanical services for thousands of commercial, industrial, institutional and retail facilities. ABM has offices, employees and does business in Illinois. ABM is one of the largest facility services contractors listed on the New York Stock Exchange, with fiscal 2006 revenues in excess of $2.7 billion and more than 75,000 employees.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over ABM, as ABM has, by its conduct, submitted itself to the jurisdiction of the courts of this State pursuant to 735 ILCS 5/2-209(a)(1) by transacting business within this State; pursuant to 735 ILCS 5/2-209(a)(7) by the making of a contract or promise substantially connected with this State; and/or pursuant to 735 ILCS 5/2-209(b)(4) by doing business within this State.

4. Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transaction or some part thereof occurred in Cook County.

## FACTS COMMON TO ALL CLAIMS

5. Prior to July 12, 2002, Lakeside and Lakeside Michigan provided janitorial and related services in the Midwest.

6. On or about July 12, 2002, ABM acquired substantially all the assets, business and goodwill of both Lakeside and Lakeside Michigan, pursuant to an Asset Purchase Agreement, dated July 12, 2002, among ABM, Lakeside, Lakeside Michigan and other parties.

7. Following ABM's acquisition of Lakeside and Lakeside Michigan, Sweig entered into a Sales and Marketing Employment Agreement, dated July 12, 2002 (the "Sales and Marketing Agreement"), with ABM.

8. Under the Sales and Marketing Agreement, Sweig's duties and responsibilities involved sales and marketing activities directed to customers to whom Lakeside and Lakeside Michigan had provided janitorial and building maintenance services prior to the ABM acquisition, the preservation of business relations with existing ABM janitorial and building maintenance customers and generation of new customer accounts for ABM's janitorial and facility services industry.

9. In or about the summer of 2005, Henrik C. Slipsager ("Slipsager"), ABM's President and Chief Executive Officer, spoke with Sweig regarding strategic growth of ABM through the acquisition of companies that provided services similar or complementary to ABM's. Acquisition of companies is a matter unrelated to Sweig's duties and responsibilities under the Sales and Marketing Agreement.

10. During their discussions in or about the summer of 2005, Sweig recommended OneSource as a potential target for ABM. Slipsager knew that Sweig had a long-standing business relationship with OneSource's Chairman and majority stockholder, Lord Michael Ashcroft ("Lord Ashcroft") and could make the introduction and explore a possible affiliation between ABM and OneSource. Sweig informed Slipsager that he would make the introduction but expected to be compensated if an acquisition resulted. Slipsager did not request Sweig to contact Lord Ashcroft on behalf of ABM at that time, but said he would keep Sweig's offer in mind.

11. In the spring of 2006, Slipsager and Sweig again discussed a possible business relationship between ABM and OneSource and again discussed Sweig's close relationship with Lord Ashcroft. Slipsager did not ask Sweig to contact Lord Ashcroft on behalf of ABM at that time.

12. In or about the spring of 2007, Slipsager contacted Sweig and asked Sweig to approach Lord Ashcroft to see if he had an interest in a potential affiliation between One Source and ABM. Sweig again informed Slipsager that he would do so, but that he expected a fee if any deal was consummated. Slipsager orally agreed that Sweig would be compensated if a deal between ABM and OneSource closed.

3

13. In reliance on this oral promise, in or about the spring of 2007, Sweig telephoned Lord Ashcroft from Chicago and informed him of ABM's interest in acquiring OneSource. Lord Ashcroft told Sweig that he was interested in such a transaction. Lord Ashcroft requested that Sweig inform Slipsager of OneSource's interest and asked Slipsager to contact Lord Ashcroft to further discuss ABM's potential acquisition of OneSource.

14. Prior to providing Slipsager with information regarding his discussion with Lord Ashcroft, Sweig again reminded Slipsager that, if ABM acquired OneSource, Sweig would expect to be compensated for his role in bringing the parties together. Slipsager did not dispute Sweig's request for compensation and accepted all information regarding Sweig's conversations with Lord Ashcroft. As a result, Sweig anticipated that, if the ABM/OneSource transaction was consummated, he would be paid by ABM for his efforts.

15. Sweig informed Slipsager about his discussions with Lord Ashcroft and OneSource's interest in being acquired by ABM. Sweig provided Slipsager with Lord Ashcroft's telephone number and other contact information. Sweig told Slipsager that he should contact Lord Ashcroft directly, as requested by Lord Ashcroft.

16. Upon information and belief, Slipsager had never met Lord Ashcroft prior to Sweig's introduction and had no immediate ability to contact Lord Ashcroft and present ABM's purchase inquiry. Moreover, Sweig's long-standing relationship with Lord Ashcroft ensured that ABM's offer to purchase OneSource would be considered by Lord Ashcroft.

17. In September of 2007, Sweig met with Slipsager in Chicago to discuss the potential acquisition of OneSource by ABM. Slipsager confirmed that he had contacted Lord Ashcroft and had discussed ABM's potential acquisition of OneSource. Slipsager assured Sweig that he would receive a one percent (1%) business opportunity fee if the deal closed.

4

18.  Thereafter, upon information and belief, Slipsager and Lord Ashcroft continued their discussions regarding ABM's acquisition of OneSource.

19.  OneSource, ABM and a wholly owned subsidiary of ABM entered into an Agreement and Plan of Merger, dated October 7, 2007, whereby ABM acquired OneSource for $365.0 million in cash, pursuant to a merger of OneSource into the wholly owned subsidiary of ABM.

20.  On October 8, 2007, ABM issued a press release regarding its acquisition of OneSource. ABM's press release states:

> SAN FRANCISCO AND BELIZE CITY, BELIZE, October 8, 2007 – ABM Industries Incorporated (NYSE: ABM), a leading facilities services contractor, and OneSource Services Inc. (London AIM: OSS) ("OneSource") announced today that they have signed a definitive agreement under which ABM will acquire OneSource for $365 million in cash. OneSource provides outsourced facilities services, including janitorial, landscaping, general repair and maintenance and other specialized services, for more than 10,000 commercial, industrial, institutional and retail accounts in the U.S.
>
> The transaction combines two valuable facilities services platforms to create the scale, breadth and financial strength necessary to grow in the increasingly competitive and global service provider marketplace.
>
> "We saw an opportunity to accelerate our growth strategy and we seized it," said Henrik Slipsager, ABM president and chief executive officer. "Consistent with our long-held commitment to increasing shareholder value, the acquisition of OneSource complements our strategy and further strengthens our growth prospects."
>
> . . . .
>
> ABM expects to operate the combined company with annual run-rate cost synergies of between $45 and $50 million, which are expected to be fully implemented within 12 months after closing. The company expects to achieve $28 million to $32 million worth of cost synergies in fiscal year 2008, assuming a November 2007 closing. The synergies, which were identified jointly by the two companies, will be achieved primarily through a reduction in

> duplicative positions and back office functions, the consolidation of facilities and elimination of professional fees and other services.
>
> . . . .
>
> ABM expects to realize tax benefits from acquiring net operating loss carry forwards of approximately $195 million and from deducting existing goodwill amortization, together expected to initially total $14 million in annual tax cost savings.

21. ABM's acquisition of OneSource would not have occurred without the efforts of Sweig, and he was the procuring cause of that transaction. The $365 million acquisition of OneSource by ABM was a direct result of Sweig's efforts described above.

22. As chief executive officer of a large, publicly traded company, and being experienced in prior merger and acquisition transactions, Slipsager knew or should have known that, by asking Sweig to use his long-standing relationship with Lord Ashcroft to begin a dialogue with Slipsager about ABM's potential acquisition of OneSource, Sweig would expect reasonable compensation in the event his efforts resulted in ABM's acquisition of OneSource.

23. As chief executive officer of a large, publicly traded company, and being experienced in prior merger and acquisition transactions, Slipsager also knew or should have known that when an individual, such as Sweig, introduces a party to another party for the purpose of effecting a purchase, it is customary to pay a reasonable finder's or business opportunity fee.

24. A customary finder's or business opportunity fee under such circumstances is approximately one percent (1%) of the purchase price of the acquired company.

25. Following ABM's issuance of the November 8, 2007 press release, Sweig sent Slipsager an e-mail on October 8, 2007, stating:

> I am pleased that my calling Michael Ashcroft at your request on behalf of ABM and then arranging for the two [of] you to begin a dialog of ABM's potential acquisition of One Source, as well as

my subsequent conversation with Michael and you about ABM's purchase of One Source has lead to ABM's potential acquisition of One Source. As I strongly suggested when I made the first call to Michael, this would be a great acquisition for ABM which obviously the BOD [board of directors] of ABM agrees with.

26. On the same day, October 8, 2007, Slipsager responded by sending Sweig an e-mail. Slipsager did not dispute Sweig's instrumental role in making an introduction to Lord Ashcroft that directly resulted in ABM's acquisition of OneSource. In his e-mail, Slipsager acknowledged that, after Sweig's introduction and Slipsager's and Lord Ashcroft's initial discussions, "things just developed."

27. Sweig has requested that he be compensated by ABM for the reasonable value of his services through the payment of a customary finder's or business opportunity fee.

28. ABM rejected Sweig's requests and refused to pay Sweig a customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource.

29. On November 14, 2007, ABM announced the completion of its acquisition of OneSource. In a press release issued on November 14, 2007, ABM stated:

> SAN FRANCISCO--(BUSINESS WIRE)----ABM Industries Incorporated (NYSE:ABM) today announced the completion of its previously announced acquisition of OneSource Services Inc. (London AIM:OSS) for $365 million in cash.
>
> 'We are very pleased to complete this transaction, which provides value to shareholders, service to customers and opportunities for employees,' said Henrik Slipsager, ABM president and chief executive officer. 'We welcome our new colleagues to ABM as we work to accelerate our growth strategy.'

## COUNT I
### BREACH OF CONTRACT

30. Sweig restates, realleges and incorporates by reference Paragraphs 1 through 29 as and for this Paragraph 30.

7

CHICAGO/#1713722.9 11/26/07

31. ABM and Sweig entered into an oral agreement whereby ABM agreed to pay Sweig a customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource.

32. The customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource is one percent (1%) of the $365 million purchase price paid by ABM for OneSource, or $3.65 million.

33. ABM breached its agreement with Sweig by, among other things, refusing to pay Sweig a customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource.

34. Sweig has performed all of his obligations under the parties' agreement.

35. As a result of ABM's breach of the parties' agreement, Sweig has been damaged in the amounts set forth above and in additional amounts to be determined at trial.

WHEREFORE, Sweig respectfully prays that this Court:

(a) enter judgment in Sweig's favor and against ABM for the reasonable value of Sweig's activities described herein in connection with ABM's acquisition of OneSource, in an amount equal to that which is customary in the industry under similar circumstances, which is at least $3.65 million, along with any additional amounts to be proven at trial; and

(b) grant such other and further relief to Sweig as the Court deems just and appropriate under the circumstances.

## COUNT II
### QUANTUM MERUIT—CONTRACT IMPLIED-AT-LAW

36. Sweig restates, realleges and incorporates by reference Paragraphs 1 through 29 as and for this Paragraph 36.

37. Sweig pleads Count II in the alternative to Count I, and any contradictory statements or allegations shall not be deemed an admission of facts stated herein.

CHICAGO/#1713722.9 11/26/07

38. Through Sweig's efforts, Slipsager was introduced to Lord Ashcroft and engaged in discussions with Lord Ashcroft about ABM's acquisition of OneSource.

39. Sweig's ability to place Slipsager in contact with Lord Ashcroft was a result of Sweig's long-standing relationship with Lord Ashcroft. Sweig was under no obligation to leverage this relationship for ABM's benefit.

40. Aside from his entitlement to a reasonable finder's fee, Sweig did not stand to gain anything by contacting Lord Ashcroft directly, presenting ABM's business proposal, and arranging discussions between Slipsager and Lord Ashcroft. Furthermore, aside from his entitlement to a finder's fee, Sweig stood nothing to gain through ABM's eventual purchase of OneSource.

41. As a direct and proximate result of Sweig's efforts, Slipsager and Lord Ashcroft engaged in negotiations that resulted in ABM's purchase of OneSource for $365 million.

42. Sweig's efforts conferred a substantial benefit upon ABM, and as a result there exists a contract implied-at-law for the reasonable value of the services performed by Sweig.

43. Sweig is entitled to receive a customary finder's or business opportunity fee from ABM for Sweig's efforts described herein in connection with ABM's acquisition of OneSource.

44. The customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource is one percent (1%) of the $365 million purchase price paid by ABM for OneSource, or $3.65 million.

45. ABM has refused to pay Sweig a customary finder's or business opportunity fee for Sweig's efforts described herein in connection with ABM's acquisition of OneSource.

CHICAGO/#1713722.9 11/26/07

46. It would be unjust and inequitable to permit ABM, a multi-billion-dollar company, to unfairly retain the benefit of Sweig's valuable efforts without paying Sweig a customary finder's or business opportunity fee.

47. As a result of ABM's improper refusal to pay Sweig a customary finder's or business opportunity fee, Sweig has been damaged in the amounts set forth above and in additional amounts to be determined at trial.

WHEREFORE, Sweig respectfully prays that this Court:

(a) enter judgment in Sweig's favor and against ABM for the reasonable value of Sweig's activities described herein in connection with ABM's acquisition of OneSource, in an amount equal to that which is customary in the industry under similar circumstances, which is at least $3.65 million, along with any additional amounts to be proven at trial; and

(b) grant such other and further relief to Sweig as the Court deems just and appropriate under the circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,

MICHAEL SWEIG

By: [signature]
One of His Attorneys

Diane M. Kehl, Esq.
Bruce A. Radke, Esq.
Matthew F. Carmody, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
Telephone: 312/609-7500
Facsimile: 312/609-5005

Dated: November 26, 2007

| 2120 – Served | 2121 – Served |
|---|---|
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served By Mail |
| 2420 – Served By Publication | 2421 – Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(Rev. 9/3/99) CCG-0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

(Name all parties)

MICHAEL SWEIG,

                Plaintiff,

v.                      No.

ABM INDUSTRIES, INC., a Delaware corporation,

               Defendant.

2007L013224
CALENDAR/ROOM S
TIME 00:00
Breach of Contract

### SUMMONS

To each defendant: ABM Industries, Inc., c/o CT Corporation System, Registered Agent
208 S. LaSalle Street, Suite 814, Chicago, IL 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file appearance and pay the required fee, in the office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602

☐ District 2 – Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 – Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 – Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 – Bridgeview
10220 S. 76th Avenue
Bridgeview, IL 60455

☐ District 6 – Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS, November 26, 2007

_____
Clerk of the Court

| Name | Bruce A. Radke, Esq., Vedder, Price, Kaufman & Kammholz, P.C. |
|---|---|
| Attorney for | Michael Sweig |
| Address | 222 North LaSalle Street, Suite 2600 |
| City | Chicago, Illinois 60601 |
| Telephone | (312) 609-7500 |
| Atty. No. | 90839 |

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

[SEAL]

**Service by Facsimile Transmission will be accepted at: 312/609-5005
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHICAGO/#1718902.1 11/26/07

1910 – No Fee Paid
1919 – Fee Paid
JURY DEMAND

CCG-67 (2-81)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHAEL SWEIG

v.                                             No.

ABM INDUSTRIES, INC., a Delaware
corporation

*FILED 2007 NOV 26 PM 2:06 DOROTHY BROWN CLERK OF CIRCUIT COURT LAW DIVISION*

## JURY DEMAND

The undersigned demands a jury trial.

```
2007L013224
CALENDAR/ROOM S
TIME 00:00
Breach of Contract
```

*[signature]*

| | |
|---|---|
| Name | Bruce A. Radke, Esq., Vedder, Price, Kaufman & Kammholz, P.C. |
| Attorney for | Michael Sweig |
| Address | 222 North LaSalle Street |
| City | Chicago, Illinois 60601 |
| Telephone | (312) 609-7500 |
| Atty No. | 90839 |

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHICAGO/#1718939.1 11/26/07