IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SWEIG, ) | |
| ) | |
| Plaintiff, ) | Case No. 08-cv-271 |
| ) | |
| ) | Judge Lefkow |
| v. ) | |
| ) | Magistrate Judge Mason |
| ABM INDUSTRIES INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant, ABM Industries Incorporated ("ABM"), by its attorneys, Jennifer A. Kenedy and Simon Fleischmann, submits the following memorandum of law in support of its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion"), and states as follows:

**INTRODUCTION**

Plaintiff, a current employee of ABM under the terms of a written employment agreement described below and attached as Exhibit 1, has sued ABM to enforce an alleged oral agreement for a multi-million dollar "customary finder's fee" based on a single telephone call made in connection with ABM's $365 million acquisition of OneSource Services, Inc. ("OneSource"). ABM strenuously denies that any such oral agreement or promise was ever made to Plaintiff. Nonetheless, assuming *arguendo* that any supposed oral agreement was made, it is unenforceable as a matter of law for several reasons, each of which require dismissal of Plaintiff's Complaint.

This case should be dismissed with prejudice because: (1) Plaintiff's alleged services fall squarely within the scope of his employment agreement, which provides for Plaintiff's compensation and exclusively governs Plaintiff's employment by ABM; (2) the alleged oral

agreement is void because it contains an indefinite price term; and (3) Plaintiff's claims are barred by the Illinois Business Broker's Act of 1995, 815 ILCS 307/10-1 *et seq*. Each of these reasons, standing alone, require the dismissal of Plaintiff's claims in their entirety.

## ALLEGATIONS IN THE COMPLAINT

The allegations in the Complaint establish that Plaintiff is an employee of ABM under the terms of a written Sales and Marketing Employment Agreement dated July 12, 2002 (the "Employment Agreement"). (Complaint at ¶ 7.) A duplicate of the Employment Agreement is attached to this brief as Exhibit 1.[1] Notwithstanding the terms of the Employment Agreement, Plaintiff alleges that "in or about the spring of 2007," Plaintiff and ABM entered into a separate oral agreement whereby Plaintiff would approach OneSource about a "potential affiliation" with ABM, and Plaintiff "would be compensated" if a deal between ABM and OneSource closed. (Complaint at ¶ 12.) Plaintiff asserts that his Employment Agreement does not govern the alleged oral agreement regarding OneSource because the Employment Agreement narrowly governs his duties and responsibilities as they relate to "janitorial and building maintenance customers." (Complaint at ¶ 8.) However, as discussed in detail in the Argument section of this brief, the clear terms of the Employment Agreement are not as limited as Plaintiff alleges.

Plaintiff further alleges that he placed a telephone call to OneSource -- a single telephone call -- regarding a possible deal between ABM and OneSource. (Complaint at ¶ 13.) Plaintiff

---

[1] The Employment Agreement is properly considered part of the pleadings for the purposes of a Motion to Dismiss because it is referred to in the Complaint and central to Plaintiff's claims regarding his contractual relationship with ABM. *See Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (*citing Venture Assocs. Corp. v Zenith Data Sys. Corp.*, 987 F.2d 431 (7th Cir. 1993) (documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim). In addition, when the terms of a document that is part of the pleadings contradict the allegations set forth in the complaint, the terms of the document govern. *See Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (holding that if there is a conflict between the allegations of a pleading and a written instrument that is part of the pleadings, the written instrument controls) (internal citations omitted).

does not allege that he provided any additional work or services in connection with the deal between ABM and OneSource.  Plaintiff alleges that ABM subsequently acquired OneSource on October 8, 2007 for $365 million and that Plaintiff was the procuring cause of that transaction.  (Complaint at ¶¶19, 21.)

Plaintiff seeks to recover what he calls a reasonable or customary finder's fee or business opportunity fee to compensate Plaintiff for his alleged role in the ABM/OneSource transaction.  Plaintiff alleges that ABM "knew or should have known" that Plaintiff "would expect reasonable compensation" in addition to the agreed upon salary and other benefits provided for in his Employment Agreement.  (Complaint at ¶22.)  Plaintiff alleges that he is entitled to a "customary finder's or business opportunity fee" of "*approximately* one percent (1%)… or $3.65 million."  (Complaint at ¶¶ 24, 32 (emphasis added).)  While the Complaint contains a buried allegation that ABM "assured" Plaintiff that he would be paid a one percent fee if the OneSource deal closed (Complaint at ¶ 17), that allegation is aberrant in the context of the twelve (12) conflicting allegations, in addition to the Plaintiff's actual prayer for relief, which establish that the Plaintiff's claim in this case is for a vague and undefined "customary" or "reasonable" fee, which he calculates as $3.65 million, for making a single telephone call to OneSource.  (See Complaint at ¶¶ 12, 14, 22, 23, 24, 27, 28, 31-34, 40, prayer for relief.)

Based on the foregoing allegations, Plaintiff asserts claims for breach of contract (Count I) and quantum meruit (Count II), each seeking the identical relief:  "the reasonable value of [Plaintiff's] activities…in an amount equal to that which is customary in the industry under similar circumstances, which is at least $3.65 million, along with any additional amounts to be proven at trial."  Plaintiff's Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6), as Plaintiff fails to state a claim upon which relief may be granted.

**MOTION TO DISMISS STANDARD**

The Supreme Court recently ruled that a plaintiff must allege sufficient facts to support the allegations in the complaint and state a plausible claim in order to avoid dismissal under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Seventh Circuit has interpreted the *Twombly* decision as imposing two hurdles on a plaintiff to avoid dismissal: "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Twombly*, 127 S. Ct. at 1965, 1973 n. 14) (internal quotations omitted).

**ARGUMENT**

**I.      PLAINTIFF'S CLAIMS ARE BARRED BY HIS EMPLOYMENT AGREEMENT.**

Plaintiff's claims for a customary finder's fee under an oral agreement to provide services in connection with ABM's acquisition of OneSource are barred by his Employment Agreement for two independent reasons: First, his "services" fall squarely within the scope of his employment. Second, even if they were beyond the scope of the services described in his Employment Agreement, his claims are still barred by the integration clause, which expressly prohibits any modifications to the parties' contractual relationship unless they are in writing, signed by the Plaintiff and two Officers of ABM, and approved by ABM's Board of Directors.

While Plaintiff's allegations that his actions were beyond the scope of his Employment Agreement may generally be accepted as true when deciding a motion to dismiss, when the terms of a document that is part of the pleadings negate the claims asserted, the terms of the document govern. *See Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir.

2002) (holding that if there is a conflict between the allegations of a pleading and a written instrument that is part of the pleadings, the written instrument controls) (internal citations omitted).  Therefore, the terms of the Employment Agreement as to its scope trump Plaintiff's conflicting allegations.

    A. **Plaintiff's alleged services are covered by his Employment Agreement.**

  Plaintiff's claims against ABM are based on his allegations that ABM's CEO requested that Plaintiff contact OneSource regarding a possible business relationship between ABM and OneSource.  (Complaint at ¶ 12.)  Even accepting such allegations as true for the purposes of ABM's Motion, Plaintiff's allegations place him squarely within the scope of his duties and responsibilities under his Employment Agreement.

  Specifically, the Employment Agreement provides, among other things, that Plaintiff "…shall be expected to assume and perform such sales and marketing duties and responsibilities as are assigned from time to time by the Chief Executive Office of Company to whom Executive shall report and be accountable."  (Exhibit 1, Page 1 at Section C.)  This is entirely consistent with Plaintiff's allegation that ABM's Chief Executive Officer assigned Plaintiff the task of contacting OneSource regarding a "potential affiliation."  (Complaint at ¶ 12.)  The Employment Agreement further states that Plaintiff's duties include, "… preservation and building of new and existing business relationships of [ABM] and its affiliates."  (Exhibit 1, Page 1 at Section C).  Even accepting Plaintiff's allegation that he made the initial introduction that led to the OneSource transaction as true, such activity was clearly intended to build new business relationships for ABM as directed by ABM's CEO.  Accordingly, the services allegedly rendered by Plaintiff are expressly governed by the Employment Agreement.

  The Employment Agreement also provides for Plaintiff to be compensated for his assistance in building new business relationships for ABM.  The Employment Agreement

provides, "…[Plaintiff] agrees to accept as *compensation in full*, for [his] assumption and performance of duties and responsibilities pursuant to this Agreement:" salary and benefits as defined in the Employment Agreement. (Exhibit 1, Page 2 at Section F (emphasis added).) Accordingly, although Plaintiff alleges that making a single telephone call to OneSource, at the direction of ABM's CEO and regarding a new business relationship, fell outside his job duties and entitles him to approximately $3.65 million, such allegations are negated by the express terms of his Employment Agreement.  Accordingly, for this reason alone, ABM's Motion should be granted and this case should be dismissed with prejudice.

> B. **The Employment Agreement establishes a process for modifying the contractual relationship between the parties.**

The Employment Agreement has an integration clause, which states that the Employment Agreement contains the entire contractual relationship between the parties and it provides a framework for modifying that relationship by written agreement.  (Exhibit 1, Page 7 at Section Y.)  Specifically, the Employment Agreement provides.

> ENTIRE AGREEMENT:  Unless otherwise specified herein, this *Agreement* and Sections 7.9, 7.10 and 7.13 of the Purchase Agreement *sets forth every contract, understanding and arrangement as to the employment relationship between Executive and Company*, and this Agreement may only be changed by a written amendment signed by both Executive and Company.
>
> * * *
>
> 3.  *This Agreement may not be amended except in writing signed by the Executive and two (2) officers of the Company, and approved by the Company's Board of Directors*.

(Exhibit 1, Page 7 at Section Y (emphasis added).)  As no written amendment to the Employment Agreement is alleged to exist in this case, much less one signed by Plaintiff, two officers of ABM and approved by ABM's Board of Directors, the alleged oral agreement between ABM and Sweig, even if made (it was not), is invalid and unenforceable.  Plaintiff does

not and cannot make any allegation to avoid the intended effect of the "Entire Agreement" section of his Employment Agreement. The parties expressly agreed that their contractual relationship must be reduced to writing, signed by Plaintiff and two officers and have ABM's board approval to have effect. Moreover, integration clauses are valid and enforceable contract provisions. *See Fox v. The Montell Corporation*, 01 C 299, 2001 WL 293632, *2 (N.D. Ill Mar. 19, 2001) (evidence of oral agreements cannot be used to vary or contradict the terms of an integrated written contract); *see also Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457,464 (Ill. 1999) (integration clauses valid and enforceable).

Therefore, contrary to Plaintiff's allegations, the plain language of the Employment Agreement establishes that it broadly governs the entire employment relationship between Plaintiff and ABM. The Employment Agreement provides for the building of new business relationships, such as the acquisition of OneSource, as assigned by ABM. The Employment Agreement provides for executive compensation and a multitude of benefits to Plaintiff in exchange for his services.

Significantly, the Employment Agreement's integration clause provides that there are no other contracts or understandings between the parties, and any such modifications to their relationship must be in writing. The parties agreed to a framework within which modifications may be made to their contractual relationship, so that one party could not later assert some alleged separate multi-million dollar oral "side agreement" such as Plaintiff purports to assert in this case. The only purpose for an integration clause is to provide employers with adequate protection from actions such as this case, and it must be enforced. If Plaintiff is allowed to proceed with his claim for a multi-million dollar oral side agreement outside the scope of a written employment agreement that expressly provides there are no other agreements between

the parties, then employment agreements, and the protections for all parties that such agreements are intended to afford, are rendered meaningless. Accordingly, for each of these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## II.   THE ALLEGED ORAL AGREEMENT IS VOID FOR INDEFINITENESS.

Even if the Court could somehow find that the alleged oral agreement falls outside the scope of the Employment Agreement and that the integration clause in that agreement does not apply, Sweig's claims should still be dismissed because the purported contract lacks specific material terms that render it indefinite and unenforceable as a matter of law. Specifically, ABM's purported agreement that "Sweig would be compensated if a deal between ABM and OneSource closed" is impermissibly vague. (See Complaint at ¶ 12).

An oral agreement is not enforceable under Illinois law unless the essential terms, such as price, are sufficiently definite and certain. *Northeast Illinois Regional Commuter Railroad Corp. v. Kiewit Western Co.*, 396 F. Supp. 2d 913, 921 (N.D. Ill. 2005) (granting summary judgment after finding an oral agreement with indefinite price term unenforceable). Where the terms of an alleged oral agreement are unclear as to the price agreed upon by the parties, the contract is too vague and indefinite to create a binding and enforceable oral contract. *Id.* Pleadings that assert contracts containing indefinite essential terms may be dismissed for failure to state a claim. *See Mellon Bank, N.A. v. Miglin*, 92 C 4059, 1993 WL 281111 (N.D. Ill. Apr. 29, 1993) (granting motion to dismiss claim for breach of an oral agreement because essential terms were indefinite as a matter of law).

In *Northeast Illinois Regional Commuter Railroad Corp.*, the court held that the price term of a oral contract was indefinite where the plaintiff asked the defendant to perform construction services, and as to price, the plaintiff instructed the defendant to "spare no expense" and that the estimated cost provided by the defendant "seemed pretty reasonable." 396 F. Supp.

2d at 921. The court held that, because it could not determine a specific price that was agreed upon by the parties, the contract was too indefinite to be enforced. *Id.*

Likewise, the purported oral agreement for a finder's fee in this case is vague as to the price term. Plaintiff alleges that he and ABM's CEO entered into an oral agreement "in or about the spring of 2007" whereby Plaintiff would approach One Source on behalf of ABM regarding the possibility of an affiliation between the two companies, in exchange for ABM's agreement that "Sweig would be compensated if a deal between ABM and One Source closed." (Complaint at ¶ 12.) Rather than assert that he had an agreement for a definite fee, Plaintiff alleges that he is entitled to receive a "customary" fee under the circumstances. (Complaint at ¶ 23, 24.) In his prayer for relief on Count I (breach of contract), he requests judgment in his favor "for the reasonable value of Sweig's activities…in an amount equal to that which is customary in the industry under similar circumstances…" (Complaint at pg. 8.)

Plaintiff alleges that ABM "knew or should have known" that Plaintiff "would expect reasonable compensation" in exchange for one phone call to OneSource (apparently in addition to the agreed upon compensation stated in Plaintiff's Employment Agreement). (Complaint at ¶22.) Plaintiff alleges that he is entitled to a "customary finder's or business opportunity fee" of "*approximately* one percent (1%)." (Complaint at ¶ 24 (emphasis added).) While the Complaint contains a buried allegation that ABM "assured" Plaintiff that he would be paid a one percent fee if the OneSource deal closed (Complaint at ¶ 17), that allegation is aberrant and directly contrary to twelve (12) other conflicting allegations, in addition to the Plaintiff's prayer for relief, which establish that the Plaintiff's claim in this case is for a vague and undefined "customary" or "reasonable" fee for making a single telephone call to OneSource. (See Complaint at ¶¶ 12, 14,

22, 23, 24, 27, 28, 31-34, 40, prayer for relief.)  These allegations and the prayer for relief establish that there was no specific agreement as to the price of the purported oral contract.

Taken as a whole, the only reasonable inference that may be drawn from the allegations in the Complaint is that the contract asserted by Plaintiff was allegedly made for some indefinite "compensation," and not a specific 1% fee.  Accordingly, Plaintiff has pled himself out of court by asserting a contract with an indefinite price term.  Therefore, for this additional reason, ABM's Motion should be granted.

**III.   PLAINTIFF'S CLAIMS SHOULD BE BARRED BY THE ILLINOIS BUSINESS BROKERS ACT OF 1995.**

The Illinois Business Brokers Act of 1995, 815 ILCS 307/10-1 *et seq.* (the "Act") applies to persons who, in return for a fee, assist or direct in the procuring of prospects intended to result in the purchase, sale or exchange of a business.  815 ILCS 307/10-5.10; s*ee* Edwin D. Mason & Charles R. Haywood, *The Illinois Business Brokers Act: Pitfalls for the Unwary*, 85 Ill. B.J. 542 (1997).  Plaintiff's allegations that he provided services to facilitate the purchase of OneSource by ABM, and that he was in fact the "procuring cause" of the transaction, meet the definition of business broker under the Act.  *Compare* 815 ILCS 307/10-5.10; *and* Complaint at ¶¶ 10, 12, 21.

The Act requires business broker contracts to be in writing, and it further requires business brokers to register, pay fees to the state, and make certain disclosures before entering into a business broker agreement with a client.  815 ILCS 307/10-30, 10-35; s*ee Sandra F. Monroe & Co., Inc. v. National Equipment Services, Inc.*, NO. 99 C 3120, 2000 WL 420746 (N.D.Ill. Apr 12, 2000); *see also Thomas v. Daubs*, 291 Ill. App. 3d 682 (5th Dist. 1997).  However, Plaintiff attempts to assert an oral agreement for business broker services against ABM.  In addition, Plaintiff does not allege that he is a registered business broker or that he

made any disclosures under the Act.  Accordingly, the agreement asserted in this case should be barred.

The Act applies in transactions when (i) the person engaged or sought to be engaged by the business broker is domiciled in Illinois; or (ii) when the company or business sought to be sold has its principal place of business in Illinois.  815 ILCS 307/10-105.  Accordingly, for the Act to apply, ABM must be "domiciled" in Illinois for the purposes of the Act.  ABM is incorporated in Delaware and has its headquarters in California.  However, as this court has previously decided, the definition of "domiciled" should be broadly interpreted to advance the Act's goal of preventing fraudulent business brokering activities within Illinois.  *Sandra F. Monroe & Co.*, 2000 WL 420746 at * 3.

In *Sandra F. Monroe & Co.*, this court held that "a determination of whether a foreign corporation should be deemed a resident of a state where it is doing business must be based upon the statute involved and its purpose."  2000 WL 420746 at * 2 (*citing LeBlanc v. G.D. Searle & Co.*, 533 N.E.2d 41 (Ill. App. Ct. 1988)) (internal quotation omitted).  The Court further held that "domiciled" should be defined broadly to advance the Act's consumer protection purpose.  2000 WL 420746 at * 3.  The court stated, "***the objective is to ensure that clients and proposed clients of business brokers have full disclosure of the material terms in the business broker's contract with the client, have an opportunity to review those terms and, at the client's request, have an attorney review the contract.***"  2000 WL 420746 at * 3 (*quoting* Ill. Admin. Code § 140.301; *citing* Edwin D. Mason & Charles R. Haywood, *The Illinois Business Brokers Act: Pitfalls for the Unwary*, 85 Ill. B.J. 542 (1997) (Act intended to address "a gap in the regulatory structure governing 'middlemen' professions, allowing ... certain so-called 'shysters' to dupe Illinois

citizens.")).  The Act applies to commercial entities and not just unsophisticated homebuyers. 2000 WL 420746 at * 3.

Accordingly, the court held that the Act should be broadly applied, cautioning that "a narrow definition of 'domiciled' would severely hamper the legislature's goal of preventing fraudulent brokering activities within Illinois because it would allow unregistered business brokers to continue to operate in the state."  *Sandra F. Monroe & Co.*, 2000 WL 420746 at * 3. "The [Act's] clear legislative intent therefore suggests that it was enacted to protect Illinois businesses, whether they are incorporated in Illinois or maintain their principal place of business in Illinois."  *Id.*  While ABM recognizes that the *Sandra F. Monroe & Co.* case involved a foreign corporation with its principal place of business in Illinois, it is clear from the language of that decision that no bright line rule should be applied to the definition of "domiciled" that would have the effect of permitting the very conduct that the legislature expressly sought to curtail: unregistered business brokers seeking to assert contested oral agreements against unsuspecting parties doing business in Illinois.

Therefore, the Act should be applied to include the transaction at issue in this case.  As Plaintiff points out in his Complaint, ABM provides a wide range of services in Illinois, has offices in Illinois, employs citizens of Illinois, and does business in Illinois.  (Complaint at ¶ 2.) The Complaint further alleges that ABM transacts business in this state, that it made a contract or promise substantially connected with Illinois, and generally does business in Illinois.  (Complaint at ¶ 3).  ABM's deep connection with Illinois and its reliance upon the protections afforded by Illinois law are further evidenced by the Employment Agreement between Plaintiff and ABM, which expressly provides that it shall be interpreted and enforced under Illinois law (Exhibit 1, Page 6 at Section P.)  Accordingly, the public policy underlying the Act, set by the legislature

and applied by the courts, would be best served by applying the Act to the business broker services allegedly rendered by Plaintiff on behalf of ABM in this case.

In addition, the Act should be applied in this case because it was Plaintiff who decided to bring this action in Illinois under Illinois law (Complaint at ¶ 3), and ABM agrees that Illinois law applies in this case. Accordingly, Illinois law should be applied in this case. *Sandra F. Monroe & Co.*, 2000 WL 420746 at * 2, fn. 1 (*citing ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) ( "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law"); *Wood v. Mid-Valley Inc .*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies")). The Act should apply in this case for this additional reason.

Applying the Act to the Complaint in this case, it is clear that Plaintiff has pled himself out of court. For the reasons stated above, Plaintiff's allegations that he brought the parties together and was the procuring cause of the ABM/OneSource transaction pursuant to an oral business opportunity or finder's fee agreement establishes that he is barred by the Act from proceeding on his claim for breach of contract (Count I). The application of the Act in this case likewise bars Plaintiff's unjust enrichment claim (Count II), because an unjust enrichment claim is not allowed where it would circumvent the statutory provisions that prohibit the underlying alleged agreement. *Sandra F. Monroe & Co.*, 2000 WL 420746 at *5 (*citing Greiner v. Dominick's Finer Foods, Inc.*, 652 N.E.2d 1162, 1167 (Ill. App. Ct. 1995); *Edens View Realty & Inv., Inc. v. Heritage Enter., Inc.*, 408 N.E.2d 1069, 1075 (Ill. App. Ct. 1980)).

Moreover, Plaintiff's failure to comply with the requirements of the Act should result in the recovery by ABM of its fees and costs incurred as a result of Plaintiff's efforts to assert a

claim based on a oral business broker agreement by an individual who apparently has not registered or paid such fees to the Illinois Secretary of State as necessary to provide the services that Plaintiff alleges to have performed in his Complaint.  The Act provides that anyone harmed by a business broker's violation of the Act may recover damages up to the amount of any fees actually paid, plus interest and attorneys' fees.  815 ILCS 307/10-60.  Accordingly, ABM requests recovery of its attorneys' fees as part of the relief requested by its Motion.

Accordingly, for this additional independent reason, ABM's Motion should be granted in its entirety and Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

For each of the foregoing reasons, Defendant, ABM Industries Incorporated, respectfully requests entry of an order (1) dismissing this case with prejudice, (2) awarding Defendant its reasonable fees and costs incurred in connection with this matter under 815 ILCS 307/10-60, and (3) granting such further relief as the Court finds just and appropriate.

DATED:  January 16, 2008                    Respectfully Submitted,

                                            ABM INDUSTRIES INCORPORATED


                                            By:    /s/ Jennifer A. Kenedy
                                                   One of its attorneys

Jennifer A. Kenedy (6216342)
Simon Fleischmann (6274929)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: 312.443.0462
Facsimile: 312.896.6471

## CERTIFICATE OF SERVICE

      I, Jennifer A. Kenedy, an attorney, certify that I caused the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) to be served upon Bruce A. Radke (bradke@vedderprice.com), Vedder, Price, Kaufman & Kammholz, P.C., through the Court's Case Management / Electronic Case Files (CM/ECF) system on January 16, 2008.

                                                          /s/ Jennifer A. Kenedy  
                                                             Jennifer A. Kenedy