**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL SWEIG, | ) |
| | ) |
| Plaintiff, | ) Case No. 08-cv-271 |
| | ) |
| | ) Judge Lefkow |
| v. | ) |
| | ) Magistrate Judge Mason |
| ABM INDUSTRIES INCORPORATED, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant, ABM Industries Incorporated ("ABM"), by its attorneys, Jennifer A. Kenedy and Simon Fleischmann, replies to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Response") and, in further support of its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion"), states as follows:

Jennifer A. Kenedy (6216342)
Simon Fleischmann (6274929)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: 312.443.0462
Facsimile: 312.896.6471

**INTRODUCTION**

ABM's 12(b)(6) Motion should be granted. Plaintiff's Response contains arguments and assertions that are in conflict with the allegations in his own complaint, the plain language of his Employment Agreement, Illinois case law, and the public policy underlying The Illinois Business Brokers Act of 1995, 815 ILCS 307/10-1 *et seq.* (the "Act").[1] Specifically, Plaintiff incorrectly asserts that (1) the Employment Agreement relates strictly to "new customer accounts" and not also to new business relationships (Response at 5-6), and that the Employment Agreement specifically provides for separate oral employment agreements such as the one asserted in this case (Response at 7-8); (2) the allegations in the Complaint make clear that Plaintiff seeks the specifically defined amount of 1% of the acquisition price in the OneSource transaction (Response at 9); and (3) ABM should not be entitled to the Act's protections against an unregistered and unauthorized business broker asserting an oral agreement against a company with a deep connection to Illinois and that relies upon Illinois law in its dealings with the public and with the Plaintiff in particular (Response at 11-13).

Plaintiff's objections to ABM's Motion should be overruled and this case dismissed for each of the following reasons: (1) the plain language of the Employment Agreement establishes that new business relationships, such as ABM's new business relationship with OneSource, is a separate job responsibility from new customer accounts; (2) the Employment Agreement and Illinois law prohibit subsequent oral modifications such as the one alleged by Plaintiff; (3) the allegations in the complaint are not sufficiently definite to establish an oral agreement between the parties; and (4) Plaintiff's narrow view of the Act undermines the precise legislative intent of the Act: to protect the public who conduct business in Illinois from unregistered business

---

[1] Capitalized terms not otherwise defined in this rely brief shall have the same meanings ascribed such terms in ABM's Memorandum in Support of Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Memo").

brokers asserting unauthorized oral "finder's fee" contracts in Illinois. Accordingly, ABM's Motion should be granted and this case should be dismissed with prejudice.

I. **PLAINTIFF INVOKES THE WRONG STANDARD FOR THIS MOTION.**

ABM sets forth the correct standard for its Motion on page four of its Memo. Last year the Supreme Court ruled that a plaintiff must allege sufficient facts to support the allegations in the complaint and state a plausible claim in order to avoid dismissal under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, -- U.S. -- ,127 S. Ct. 1955, 1965 (2007). In doing so, the Court overruled the "any set of facts" standard derived from *Conley v. Gibson*, 335 U.S. 41 (1957) and relied upon by Plaintiff in his Response. (Response at 4 (citing cases from various jurisdictions for the "any set of facts" standard derived from *Conley* ).)

There is no plausible claim here. The arguments in support of ABM's Motion and the plain language of the Employment Agreement demonstrate that dismissal would be appropriate even under the now overruled "any set of facts" standard. When the present motion to dismiss standard is applied, dismissal of this case is clearly required.

II. **THE PLAIN LANGUAGE OF THE EMPLOYMENT AGREEMENT DEFEATS PLAINTIFF'S CONTRARY ALLEGATIONS AND ARGUMENTS.**

In a clear example of cherry picking language from the Employment Agreement to justify his implausible claims in this case, Plaintiff's Response incorrectly asserts that his responsibilities under the Employment Agreement are limited to only "new customer accounts" and that the agreement provides for subsequent oral agreements such as the one asserted in this case. (Response at 1, 4-7.) Plaintiff further inaccurately asserts that the parties entered into a valid oral modification of the Employment Agreement. (Response at 8.) As discussed below, Plaintiff's assertions are contrary to the plain language of the Employment Agreement, which trumps contrary allegations and arguments as a matter of law. *See Thompson v. Illinois Dept. of*

*Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (the terms of a written instrument that is part of the pleadings control contrary allegations in the complaint).  Plaintiff's arguments are also unsupported by the case law he cites in an attempt to support his claims.

> **A.  Plaintiff's Alleged Services In Connection With ABM's Business Relationship With OneSource Are Covered By The Plain Language Of His Employment Agreement.**

Plaintiff's claim to enforce an alleged multi-million dollar oral side agreement in connection with ABM's new business relationship with OneSource must be dismissed, because even assuming Plaintiff was the procuring cause of that new relationship (which ABM disputes), such services are covered by the plain language of his Employment Agreement.

Contracts are generally interpreted only in accordance with the language contained within the four corners of the written document.  *See Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999); *see also Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 943, 810 N.E.2d 658, 670 (2nd Dist. 2004).  If the language is unambiguous, then the contract is interpreted as a matter of law without the use of extrinsic evidence.  *Air Safety, Inc.*, 185 Ill. 2d. at 462, 706 N.E.2d at 884.  In this case, the unambiguous language of the Employment Agreement shows that Plaintiff's alleged services in connection with ABM's relationship with OneSource are within the scope of his employment.

> **1.  Plaintiff's duties and responsibilities extend not only to "customer accounts," but also more generally to "business relationships."**

Plaintiff's duties and responsibilities under the Employment Agreement are stated in their entirety as follows:

> DUTIES & RESPONSIBILITIES:  [Plaintiff] shall be expected to assume and perform such sales and marketing duties and responsibilities as are assigned from time-to-time by the Chief Executive Officer of [ABM] to whom [Plaintiff] shall report and be accountable.  Such sales and marketing duties include, ***without limitation, [a]*** generation of ***new customers and customer accounts*** for [ABM]

>and its affiliates, ***and [b] the preservation and building of new and existing business relationships of [ABM]*** and its affiliates.

(Motion, Exhibit 1, Page 1 at Section C (emphasis added).) Contrary to the arguments in his Response, Plaintiff's responsibilities for "new customers and customer accounts" are separate from and in addition to Plaintiff's responsibilities for developing new "business relationships." *Id.* Plaintiff's argument that the scope of the Employment Agreement is strictly limited to "customer accounts" ignores the explicit language of his agreement.

If "business relationships" simply meant "customer accounts" then there would be no need to separately identify building new business relationships as part of Plaintiff's job responsibilities. Courts give affect to the contract language agreed upon by the parties. *Air Safety, Inc.*, 187 Ill. 2d at 462, 706 N.E.2d at 884. Illinois law does ignore the clear distinction in the Employment Agreement between customer accounts and business relationships. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (recognizing a "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other."); *see also In re Halas*, 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964 (1984) ("It is fundamental in contract construction that, if possible, effect must be given to all of the language so that provisions which appear to be conflicting or inconsistent may be reconciled and harmonized.").

Plaintiff's alleged services in connection with the ABM's new business relationship with OneSource is covered by the plain language of the Employment Agreement. Plaintiff's argument that the Employment Agreement is strictly limited to "customer accounts," in which he ironically accuses ABM of mischaracterizing the agreement, must be trumped by the controlling language of his Employment Agreement. Accordingly, Plaintiff cannot maintain an action for

compensation for beyond that which is provided for in his Employment Agreement. Accordingly, ABM's Motion must be granted.

>     2.    **Plaintiff improperly seeks to introduce extrinsic evidence that the Employment Agreement means something other than what it says.**

Plaintiff further asks the Court to consider matters outside the four corners of the Employment Agreement, such as Plaintiff's subjective intent and the context in which the agreement was entered into, apparently recognizing that the plain language of the Employment Agreement supports ABM Motion. (Response at 5-6.) However, extrinsic evidence may not be used to interpret an unambiguous contract, *particularly* when the parties formally include an integration clause in their contract, because "they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc.*, 187 Ill. 2d. at 463, 706 N.E.2d at 885. An integration clause is a "clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement." *Air Safety, Inc.*, 187 Ill. 2d. at 464, 706 N.E.2d at 885.

Here, the Employment Agreement contains an integration clause providing that no extrinsic evidence may be used to interpret the agreement. (Motion Ex. 1, Page 8, Section Y(1).) Plaintiff ignores this express term of his Employment Agreement. Regardless, Plaintiff's argument that ABM's Motion should be denied on the basis of matters beyond the four corners of the Employment Agreement is unsupportable under Illinois law.

In addition, Plaintiff generally asserts that "In any event, to the extent that there is any ambiguity regarding the scope of [the Employment Agreement], is should be construed against ABM, the drafter of the agreement." (Response at 7 (citation omitted).) Plaintiff does not purport to identify any ambiguity in the Employment Agreement or argue that one exists on the face of the agreement. Rather, he merely asserts that just in case there is some ambiguity in the

agreement that neither party has identified, it should be construed against ABM. However, Plaintiff again ignores the terms of his Employment Agreement for even such a minor point as some undefined ambiguity that neither party asserts in their briefs.

The Employment Agreement provides, "This Agreement was negotiated in good faith by the parties hereto, who hereby agree to share the responsibility for any ambiguities, uncertainties or inconsistencies herein." (Motion Ex. 1, Page 7, Section V.) Accordingly, Plaintiff's argument that some undefined and unasserted ambiguity in the Employment Agreement should be construed against ABM is yet another example of Plaintiff ignoring the express terms of his written agreement with ABM.

The Employment Agreement, by its plain language, broadly covers all services in connection with not only new customer accounts but also new business relationships. Plaintiff's alleged services in connection with ABM's new business relationship with OneSource are therefore covered by his Employment Agreement. Plaintiff's arguments to the contrary seek to ignore the plain terms of his Employment Agreement and avoid the inescapable conclusion that his compensation for the services he allegedly rendered in connection with the ABM/OneSource relationship is provided for and limited by the provisions of his Employment Agreement.

      **B.**    **Plaintiff Cannot State A Plausible Claim For A Separate Oral Agreement.**

The Employment Agreement expressly states that it contains the entire contractual relationship between the parties, and that all subsequent modifications to the parties' employment relationship must be in writing and signed by Plaintiff, two officers of ABM and approved by ABM's Board of Directors. (Memo at 6, citing Exhibit 1, Page 7 at Section Y.) Plaintiff cannot state a plausible claim in this case because he alleges that he entered into a subsequent oral agreement with just a single ABM officer to modify the terms of his employment.

Notwithstanding the plain terms of his Employment Agreement that cover Plaintiff's alleged services, and despite the clear terms of the Employment Agreement regarding modifications, Plaintiff maintains that (1) the Employment Agreement actually provides for subsequent oral employment agreements, and (2) he further asserts that he simply should not be bound by the term of his Employment Agreement that absolutely prohibits subsequent oral employment agreements such as the one asserted in this case. Both arguments lack merit and should be rejected.

### 1. The Employment Agreement does not provide for separate oral agreements.

Completely ignoring the requirement that any amendment to the employment relationship between the parties must be in writing and signed by two officers of ABM and approved by ABM's board of directors, Plaintiff argues that Section F(2) (Compensation) of his Employment Agreement expressly provides for subsequent oral employment agreements between the parties such as the one he purports to assert in this case. (Response at 7-8.) However, Section F(2), quoted by Plaintiff in his Response, simply provides that any compensation Plaintiff may be entitled to under the Employment Agreement may be offset by compensation he may receive under a subsequent "employment agreement" with ABM or its affiliates. (Response at 7; Motion, Exhibit 1 at Page 2, Section F(2).)

*Nothing* in that section provides for, contemplates or otherwise permits subsequent *oral* employment agreements between the parties. Section F(2) simply provides for the manner in which Plaintiff's compensation will be handled should the parties ultimately enter into multiple employment agreements. Section Y provides that any such agreements must be in writing, signed by two officers of ABM, and approved by ABM's board of directors. (Motion, Exhibit 1 at Page 8, Section Y(2).) Plaintiff's reliance on Section F(2) of the Employment Agreement as

authority for entering into a multi-million dollar oral side agreement for allegedly developing a new business relationship is not only completely unsupported by the clear terms of the agreement, but it is also part of a continuing pattern of asking the Court to refuse to enforce certain written contract terms while, in this instance, reading a non-existent term into the Employment Agreement authorizing an oral employment agreement. Again Plaintiff asks this Court to interpret one section of the Employment Agreement in a manner directly contrary to the express language of another unambiguous section.

Plaintiff's argument that the Employment Agreement contemplates an oral "additional employment agreement" with ABM fails to support any plausible claim sufficient to avoid dismissal under Rule 12(b)(6). Accordingly, ABM's Motion should be granted.

### 2. Plaintiff does not allege a valid contract modification.

The Employment Agreement's integration clause is devastating to Plaintiff's claims. The integration clause states that the agreement contains the entire agreement between the parties and it may not be changed absent the written agreement of two (*2*) officers of ABM and approval by ABM's board of directors. (Memo at 6; Memo Exhibit 1, at Page 7, Section Y.) Integration clauses are perfectly valid contract provisions. *Air Safety, Inc.*, 187 Ill. 2d. at 464, 706 N.E.2d at 885.

Plaintiff argues that he should be relieved from his explicit obligation to amend the agreement in writing only, but he offers *no explanation* for why he should be excused from the requirement that any valid modification must be agreed to by two officers of ABM and approved by its board of directors. (Response at 8.) Plaintiff does not allege that his purported agreement with ABM was entered into and approved by those persons with the sole express authority to modify the employment relationship between the parties.

Plaintiff relies on *Tadros v. Kuzmak,* and similar cases, for the argument that Illinois law allows oral modifications to a written agreement even where the agreement precludes oral modifications. (Response at 8, *citing Tadros v. Kuzmak,* 277 Ill. App. 3d 301, 660 N.E.2d 301 (1st Dist. 1995) and cases cited therein.) Plaintiff argues that these cases render the integration clause completely meaningless in this case. (Response at 8.)

Plaintiff's assertion is plainly wrong. Any contract modification, written or oral, must be properly entered into by persons with authority to have effect. *Leavitt v. John Hancock Life Ins. Co.*, 04 C 7451, 2007 WL 625636, *9 (N.D. Ill Feb. 23, 2007) (no modification allowed where contract granted authority to amend only to specific individuals, none of whom agreed to the alleged modification); *Watseka Farmers Grain Cooperative Company v. F C Stone Group, Inc.*, 06-2104, 2006 WL 3743112 (C.D. Ill. Dec. 15, 2006) (*citing Chase v. Consol. Foods Corp.*, 744 F.2d 566, 569 (7th Cir. 1984) ("An appearance of authority that fools no one does not bind the principal.")). In *Leavitt*, the plaintiff sued to enforce an oral modification of an insurance policy. 2007 WL 625636 at *1. The terms of the policy expressly provided that any changes must be in writing, and that "only the President, Vice President, the Secretary, or an Assistant Secretary" of the defendant had authority to enter into any modification. 2007 WL 625636 at *1.

The plaintiff in *Levitt*, like the Plaintiff in this case, argued that the *Tadros* case rendered the requirement of a written modification by authorized officers completely unenforceable. 2007 WL 625636 at *8. This Court rejected that argument, holding that while a subsequent oral contract modification may be valid even when the original contract precludes it, a valid modification may only be entered into by the person or persons with authority to do so. 2007 WL 625636 at *8-9. In that case, the purported contract modification was not entered into by the

persons granted authority to make any amendments under the terms of the agreement.  *Id.* Accordingly, the court found that no valid modification existed as a matter of law.  *Id.*

In this case, it cannot be disputed that parties explicitly agreed that any modification to the Employment Agreement must be agreed to by two officers of ABM and approved by the board of directors.  (Motion, Exhibit 1 at Page 8, Section Y(2).)  The Employment Agreement is part of the pleadings in this case and properly considered on a motion to dismiss.  *See Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)  The purported oral agreement asserted by the Plaintiff in this case was allegedly entered into only by Plaintiff and ABM's CEO, which is insufficient under the express terms of the Employment Agreement to establish a valid modification of the integrated employment relationship between the parties.  (Complaint at ¶ 12); 2007 WL 625636 at *8-9.  Accordingly, the Court should reject Plaintiff's baseless argument that terms of the Employment Agreement was modified by Plaintiff's alleged oral agreement.[2]

Moreover, any valid modification must be supported by adequate consideration.  *See Robinson v. Ada S. McKinley Community Servs.*, 19 F.3d 359, 363 (7th Cir. 1994); *see also Ross v. May Co.*, 377 Ill. App. 3d 387, 880 N.E.2d 210, 215 (1st Dist. 2007) ("A valid modification must satisfy all criteria essential for a valid contract, including offer, acceptance, and consideration.")  Plaintiff fails to allege that ABM received any consideration for entering into this supposed oral modification of his Employment Agreement, because building new business relationships for ABM was already part of Plaintiff's duties and responsibilities to ABM.  Accordingly, Plaintiff's argument that his purported oral agreement was a valid modification of his Employment Agreement is without merit as a matter of law.

---

[2] ABM notes that Plaintiff raises the theory of a "subsequent oral modification" for the first time in his Response.  The complaint contains no allegations at all to establish that the intent of the alleged oral agreement was to modify the Employment Agreement.

The terms of the Employment Agreement preclude Plaintiff from stating a plausible claim for recovery under an oral agreement with a single ABM officer for millions of dollars in connection with Plaintiff's alleged services to build a new business relationship between ABM and OneSource. Accordingly, ABM's Motion should be granted and this case should be dismissed with prejudice.

### III.    THE ALLEGED ORAL AGREEMENT CONTAINS AN IMPERMISSIBLY INDEFINITE PRICE TERM.

Plaintiff's complaint seeks recovery of a "reasonable" or "customary" fee, which he sometimes describes as "approximately" one percent. (See Complaint at ¶¶ 12, 14, 22, 23, 24, 27, 28, 31-34, 40, prayer for relief.) Plaintiff argues in his Response that the allegations in his complaint are not what they plainly are-- an attempt to enforce an oral employment agreement with an indefinite price term. (Response at 9.) Oddly, Plaintiff argues in his Response that "ABM ignores numerous allegations in the Complaint that reference the agreed-upon one-percent (1%) fee." (Response at 9.) First, that's just not true; ABM identifies each and every allegation and Plaintiff's own prayer for relief that makes any mention of the damages he seeks to recover in this case. (Memo at 3, 9-10.) More importantly, taken together, all of those allegations demonstrate Plaintiff's inability to assert a claim for damages in the definite amount of one percent for developing a new business relationship between ABM and OneSource. Instead, the allegations and relief requested in the complaint establish that Plaintiff's claim is for a "reasonable" or "customary" fee of "approximately" one percent. Such allegations are impermissibly vague and require dismissal.

ABM argues in its Memo that essential contract terms such as price must be definite in an oral agreement. (Memo at 8-10.) In his Response, Plaintiff seeks to distinguish *Northeast Illinois Regional Commuter Railroad Corp. v. Kiewit Western Co.*, 396 F. Supp. 2d 913, 921

(N.D. Ill. 2005), from the present case on the basis that the plaintiff in that case simply instructed the defendant to "spare no expense" in providing construction services; Plaintiff argues that price term is nowhere near as definite as the "reasonable" or "customary" fee of "approximately" one percent he asserts as a definite contract term in this case. (Response at 9.) However, Plaintiff disregards the critical fact that in the *Kiewit Western Co.* case the defendant *submitted a written price estimate* which the plaintiff orally agreed "seemed pretty reasonable" in addition to instructing the defendant to "spare no expense." 396 F. Supp. 2d at 921. The written price estimate along with the defendant's oral agreement as to its reasonableness, which the court found impermissibly vague, is significantly more definite than the vague oral assertions alleged in Plaintiff's complaint in this case. Therefore, Plaintiff's attempt to distinguish the authority cited by ABM in support of its Motion is unavailing.[3]

In addition, the cases cited in Plaintiff's Response are inapposite in the present case. *Miller v. Bloomberg*, 26 Ill. App. 3d 18, 324 N.E.2d 207 (Ill. App. Ct. 1975), involved a written contract. "Oral employment contracts, at least under Illinois law, are viewed with more skepticism than their formal, written counterparts." *Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 581 (7th Cir. 1991). Accordingly, the standard by which the written agreement in *Miller* was adjudicated has no application here.

Moreover, *Fleming v. Beutel*, 395 F.2d 21 (7th Cir. 1968), pertained strictly to real estate broker agreement, and not business broker agreements (which must be in writing under the Act) or oral employment agreements as the case may be here. 395 F.2d at 21 ("No particular form of

---

[3] Plaintiff also seeks to distinguish *Mellon Bank, N.A. v. Miglin*, 92 C 4059, 1993 WL 281111 (N.D. Ill. Apr. 29, 1993) from the present case because that case involved a contingent contract (as does this case, incidentally). However, ABM relies on that case only to establish that a claim for breach of an oral agreement containing an indefinite essential term may be dismissed under Rule 12(b)(6). (Memo at 8.) ABM stands by that proposition regardless of the specific essential term that was indefinite under the facts of that case.

words is necessary to engage a *real estate broker*.") (emphasis added).  ABM details the necessary elements of non-real estate broker oral agreements in its Memo. (See Memo at 8-9.)  In addition, the court in *Fleming* held for real estate broker contracts, "What is necessary is that the broker act with the consent of the principal."  395 F.2d at 23.  As argued above, Plaintiff fails to allege that he received the approval of two officers of ABM and its board of directors to sufficiently establish that he had the consent of ABM to modify his employment relationship with the company.  The ruling in *Fleming* is distinguishable for this additional reason.

Finally, the ruling in *Wait v. First Midwest Bank/Danville*, 142 Ill. App. 3d 703, 491 N.E.2d 795 (Ill. App. Ct. 1986), that a bank's oral agreement to make a loan was valid and enforceable, was overruled by the Illinois Credit Agreement Act, 815 ILCS 160/1 *et seq.*, which prohibits the enforcement of oral agreement to lend money against banks.  Moreover, even in that forgiving decision the court required the price term (interest rate) to be sufficiently definite to state a cause of action.  142 Ill. App. 3d at 708, 491 N.E.2d at 801.  Accordingly, the authorities relied upon by Plaintiff in his Response are insufficient to avoid dismissal for asserting an oral agreement with an indefinite essential term.

Plaintiff is stuck with the allegations in his complaint regarding the terms of the alleged oral agreement at issue in this case, and his allegations demonstrate that he cannot state any plausible claim for breach of contract.  Accordingly, for this independent reason, ABM's Motion should be granted.

**IV.**  **PLAINTIFF SEEKS APPROVAL TO ENGAGE IN UNREGISTERED AND UNAUTHORIZED BUSINESS BROKER ACTIVITIES IN ILLINOIS.**

The Court should find that ABM is protected from Plaintiff's unregistered and unauthorized business broker activities under The Illinois Business Brokers Act of 1995, 815 ILCS 307/10-1 *et seq.* (the "Act").  The issue is whether ABM should be deemed a resident of

Illinois for purposes of gaining the protections of the Act. *See Sandra F. Monroe & Co., Inc. v. National Equipment Services, Inc.*, NO. 99 C 3120, 2000 WL 420746, *2 (N.D. Ill. Apr 12, 2000) ("a determination of whether a foreign corporation should be deemed a resident of a state where it is doing business *must be based upon the statute involved and its purpose.*") (internal citations omitted) (emphasis added).

ABM will not rehash all of the arguments asserted in its Motion and Memo; however, pervasive to those arguments is the fact that that the Act has a clear legislative purpose to protect the public against unregistered and fraudulent business brokers operating in Illinois who seek to enforce oral finder's fee agreements against companies doing substantial business within this state. To that end, the Act should be broadly applied to protect ABM in furtherance of its statutory purpose.

Plaintiff's Response asserts arguments that undermine rather than further the protective goals of the Act. (Response at 11-13.) He argues that the Act should be narrowly construed to allow him to circumvent Illinois law, engage in unregistered business broker activities, be excused from all of the attendant disclosure requirements that lawful business brokers must comply with, and assert an unauthorized oral business broker agreement against his Illinois employer. *That* would further the Act's goals according to the Plaintiff.

Plaintiff cites *Martin v. Central Trust Co.*, 327 Ill. 622, 159 N.E. 312 (1927) to support his argument that ABM is not domiciled in Illinois. However, that eighty-one year old decision has no bearing on whether ABM is an Illinois resident "*based upon the statute involved and its purpose.*" *See Sandra F. Monroe & Co., Inc.*, 2000 WL 420746 at *2.

In addition, Plaintiff offers no response to ABM's authority and argument that the Act should apply because there is no choice of law issue in this case. (Memo at 13, *citing Sandra F.*

*Monroe & Co.*, 2000 WL 420746 at * 2, fn. 1 (*citing ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) ("[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law"); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies")). This Court found this argument persuasive enough to include in the *Sandra F. Monroe & Co.* decision, and while there were other independent reasons to apply the Act in that case, it is an additional valid argument for the application of the Act in this case.

Finally, Plaintiff's argument that that the Act does not apply to him because he does not "regularly engage" in business broker activities is completely unsupported and a further effort to narrow the scope of the protective purpose of the Act. The Act plainly applies to persons who, in return for a fee, assist or direct in the procuring of prospects intended to result in the purchase, sale or exchange of a business. 815 ILCS 307/10-5.10; s*ee* Edwin D. Mason & Charles R. Haywood, *The Illinois Business Brokers Act: Pitfalls for the Unwary*, 85 Ill. B.J. 542 (1997). There is no section of the Act or any of the enacting regulations providing that only those who "regularly engage" in business brokering are covered by the Act.

## CONCLUSION

For each of the foregoing reasons, Defendant, ABM Industries Incorporated, respectfully requests entry of an order granting Defendant's Motion to Dismiss in its entirety and awarding such further relief as the Court finds just and appropriate.

DATED:  February 28, 2008                             Respectfully Submitted,

                                                      ABM INDUSTRIES INCORPORATED

                                                      By:     /s/ Jennifer A. Kenedy
                                                            One of its attorneys

**CERTIFICATE OF SERVICE**

   I, Jennifer A. Kenedy, an attorney, certify that I caused the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) to be served upon Bruce A. Radke (bradke@vedderprice.com), Vedder, Price, Kaufman & Kammholz, P.C., through the Court's Case Management / Electronic Case Files (CM/ECF) system on February 28, 2008.

                /s/ Jennifer A. Kenedy
                 Jennifer A. Kenedy